Peterson v. Anderson.

MORRISSEY, C. J., not sitting.

———

OSCAR PETERSON ET AL., APPELLANTS, V. CLARENCE M. ANDERSON ET AL., APPELLEES.

FILED JULY 1, 1916. No. 19546.

1. **Schools:** COUNTY HIGH SCHOOL: DE FACTO BOARD: TAX LEVY. Two *ex officio* members of the board of regents of a county high school appointed a third member to fill a vacancy, afterwards the three members acting as a board filled the other two vacancies. *Held*, that the three members acting together constituted a *de facto* board. Their action in filling the vacancy was valid. An estimate made by the full board furnished sufficient authority for the county board to levy a tax for the support of a county high school.

2. ———: TAXATION: ESTIMATE. The fact that the estimate made by the board was communicated in a somewhat informal manner to the county board is a mere irregularity and is not a jurisdictional defect. *State v. Wise*, 12 Neb. 313.

3. **Taxation:** LEVY. A tax levy, otherwise valid, is not void for want of jurisdiction where it is shown that it was levied at the proper time and place by the majority of the county board, even though the record erroneously recites that it was made by the board of equalization.

4. **High Schools:** ESTABLISHMENT: STATUTORY PROVISIONS. Chapter 252, Laws 1913, was not repealed either directly or by implication by the passage of chapter 120, Laws 1915.

5. **Taxation:** CONSTITUTIONAL PROVISION: COUNTY HIGH SCHOOLS. The constitutional inhibition against county authorities assessing taxes, the aggregate of which shall exceed $1.50 per $100 valuation, does not apply to taxes levied for county high school purposes; the county high school district being a separate and distinct entity.

6. **Statutes:** VALIDITY. A provision for the free tuition of all pupils in the county cannot be enforced so far as it applies to pupils residing in districts which bear no part of the burden of taxation for the support of the county high school; but this provision was not the inducement to the passage of the act, and can be omitted without interfering with its purpose, namely, the furnishing of means to obtain an education sufficient to prepare students to enter the state university without compelling them to leave the county of their residence.

7. **Taxation:** INJUNCTION. Unless a tax is levied for an illegal or unauthorized purpose, its collection cannot be stayed by injunction.

APPEAL from the district court for Rock county: ROBERT R. DICKSON, JUDGE. *Affirmed.*

*A. A. McLaughlin* and *J. A. Douglas,* for appellants.

*H. J. Miller* and *George W. Ayres, contra.*

LETTON, J.

The plaintiffs, who are taxpayers of Rock county, bring this action for themselves and all others similarly situated. The purpose of the action is to restrain the county of Rock and its treasurer from collecting or attempting to collect any portion of a three-mill tax levied by the county board for the support of a county high school in that county.

It appears that the county board of that county, acting under the authority of the statute applying to counties not having organized within their boundaries a twelfth grade high school accredited to the state university, called a meeting of the directors of the various school districts in the county to elect three members of the board of regents of the county high school. The directors met at the time specified, June 25, 1915, but failed to elect, and adjourned the meeting until September 20, 1915. On July

12, 1915, the county treasurer and county superintendent of public instruction, who are by virtue of the statute *ex officio* members of the board of regents of a county high school, under the written advice and direction of the state superintendent of public instruction, appointed a member to fill one of the vacancies, and on the next day, the three acting as the board of regents, appointed two other members to fill the board. In August the board as thus constituted let contracts for the purchase of supplies, employed teachers, and afterwards caused a high school to be opened which has been attended by 50 pupils. A detailed estimate of the funds necessary for school purposes was made by this body, and in accordance with a request communicated to the county board by the secretary on the 18th day of August, the last day of its sitting as a board of equalization, the board of equalization, as the record shows, levied the three-mill tax recommended, which was spread upon the tax books and its collection begun.

This action was begun on November 29, 1915. The district court found that the equities of the case were with the defendants and dismissed the action.

It is admitted in the record that on June 26, 1915, there was no high school in Rock county accredited to the state university, and that when the law of 1915 was adopted there were only ten counties in the state which did not have a twelfth grade high school. It is also admitted that the three-mill levy for a county high school was not spread upon the tax list covering property in school district No. 18, which is the school district of Newport. It is shown that a high school of eleven grades was in existence in that district at that time; that a county high school has been maintained in Bassett since September 20, 1915; that indebtedness has been incurred; that 50 pupils are enrolled and 49 in attendance; that no suit was brought to restrain the action of the board of regents nor to restrain the collection of the levy until this action was begun, though a taxpayer protested to the board at the time of the levy. No protest was ever made to the board of regents

with respect to letting of contracts, the hiring of teachers, or expenditure of money. It is also admitted that the plaintiff, the Chicago & North Western Railway Company, had no notice of any of these proceedings until September, 1915, and that the notice then came to them from an independent taxpayer of that county.

It is contended that there was no board of regents having power to act. Acting under the advice and direction of the state superintendent, a third member was appointed by two *ex officio* members, and the three acting as the board of regents filled the vacancies. When the three members assumed to act under the authority of the statutes as construed by the state superintendent, and did act, they constituted at least a *de facto* board and had the power to fill the vacancies. *Bishop v. Fuller,* 78 Neb. 259. There was therefore a qualified board of regents existing which had power to act and make an estimate of expenses. The fact that the estimate made by the board was communicated in a somewhat informal manner to the county board is a mere irregularity and is not a jurisdictional defect. *State v. Wise,* 12 Neb. 313.

So also as to the complaint that the tax was levied by the board of equalization. It is shown that the levy was made by a majority of the members of the county board. The fact that from a misunderstanding of the statute the county assessor and the county clerk also took part in the proceedings should not vitiate the levy. The statute (Rev. St. 1913, sec. 6456) provides: "The county board of equalization shall adjourn from time to time until the action of the state board of equalization and assessment shall have been had and certified to the county clerk, and, on the last day of sitting as a board of equalization, the county board shall levy the necessary taxes for the current year, including all * * * school district * * * taxes required by law to be certified to the county clerk and levied by the county board." The language of this section is peculiar and is enough to mislead the county board into the idea that the levy must be made by the county board

while sitting as a board of equalization, especially since the two bodies were identical until by the new revenue law the county assessor and the county clerk were added to the board. The mere fact that the record of the county board shows that the levy was made when the board was sitting as a board of equalization is an irregularity which does not vitiate the tax nor afford ground for an injunction.

To determine the next point presented requires a statement of the legislation pertaining to county high schools. In 1907 the legislature passed an act (Laws 1907, ch. 122) the purpose of which was to permit the establishment of county high schools. The act applied to all counties in the state, and the establishment of the school depended upon a petition to the county board and the result of an election called to determine whether a county high school should be established. In 1911, 1913 and 1915 this law was amended. In 1913 an independent act was also passed entitled "An act to provide for the organization of county high schools in *counties not having a twelfth grade high school.*" Laws 1913, ch. 252. This act provided : "The county board of any county in this state that does not have organized within the borders of such county a twelfth grade high school accredited to the state university, shall be deemed authorized and it shall become their duty on the first Monday of June to call a meeting of all the directors of the several school districts in the county to meet at the county seat to elect a board of regents, in accordance with the provisions of law governing boards of regents for county high schools, and which provisions shall apply to a school organized by the county commissioners or supervisors the same as if organized as now provided for by law. The county high school herein provided for by law shall be located at the county seat of such county." The provisions of the former act relating to the organization of county high schools established by petition were thus adopted and carried forward into the new act. In 1915 an act (Laws 1915, ch.120) was passed amending sections 6819, 6833, Rev. St. 1913, and also repealing sections 6820, 6821 and

6834. The first section of this act purports to amend the first section of the 1907 act by making the establishment of a county high school mandatory in counties in which "there is not now located a twelfth grade high school accredited the state university," and the second section pertains to the right to vote bonds of the district. The sections repealed related to the holding of an election, the declaration of the result by the county board, and the right to vote on the site for the school. None of these sections includes the act of 1913, and no reference to that act is made. The act of 1915 does not repeal the act of 1913 by implication since its provisions are not inconsistent therewith; and, even if void for the reasons asserted by plaintiffs (which we do not decide), it affords them no aid in invalidating the tax levy.

It is also contended that the tax exceeds the constitutional limitation which prohibits county authorities from assessing taxes the aggregate of which shall exceed $1.50 per $100 valuation. We think the objection is not tenable. The county high school district is a separate corporation, and the tax levied is not assessed and levied for county purposes, but by the county board acting for the high school district.

It is said the statute permits the exclusion from the tax levy of any district which certifies to the board of regents on or before the 15th day of June of each year that a course of study beyond eight grades has been prescribed for the school for the ensuing year, and provides that tuition shall be free to all pupils residing in the county, and therefore that the tax is not uniform, but discriminates in favor of the taxpayers of such a district and against those outside of its boundaries and is void. While the means to attain the object are not felicitous, the effect of the provision is the same as if the legislature had in so many words declared that all portions of a county outside the limits of school districts in which "a course of study beyond the first eight grades has been prescribed for the school for the ensuing year" shall constitute a high

school district. There can be no question of its power to make such a distinction. The trouble is with the provision that any such district shall not be taxed if its officers so certify in any year on or before the 15th day of June. Is there any constitutional inhibition against allowing a district to separate from the county high school district by increasing its course of study and so certifying? We think not. The method may be clumsy, but it is not for the court to set it aside. With respect to the provision for free tuition of all pupils in the county, we are satisfied this provision cannot be enforced so far as it applies to pupils residing in districts which bear no part of the burden of taxation for the support of the county high school. *High School District v. Lancaster County,* 60 Neb. 147. But this defect is a minor one. It could not have been the inducement to the passage of the act and can be so construed without interfering with the purpose of the act, viz., the furnishing of means to obtain a high school education sufficient to prepare students for entrance to the state university without compelling them to leave the county of their residence. The purpose of the act is laudable, and the court should not lightly set it aside if by any reasonable means it can be so construed as to uphold its validity. Furthermore, there is nothing in the record to show that any pupil from the omitted district has attended the county high school, or that any portion of the taxes levied against the plaintiff or any other taxpayer in the county had been or will be devoted to the education of any pupil from that district. It is a well-established rule that no one can complain that a statute is unconstitutional unless he is injuriously affected thereby, and that the courts will not set aside a law as violative of the Constitution for the reason that there is a possibility that one's interest may be injuriously affected in the future.

It is argued that a county high school has never been established by the board of county commissioners; that the board has made no finding that a twelfth grade high

school accredited to the state university was not organized within the boundaries of the county, and that, prior to the levy, school district No. 18 of the county had organized such a high school which is now being maintained and was in process of organization at and prior to June 26. We are of opinion that the legislature established a high school district, and not the board; that when the fact was patent to all it was unnecessary for a formal finding to be made by the county board; and the fact that it made the call for the meeting of the school directors was sufficient evidence *prima facie* that no such school existed. The allegation that, prior to the levy, there was an accredited high school in the county is absolutely unsupported by the evidence.

The local conditions in Rock county are such as to demonstrate that the law may not always operate fairly and satisfactorily to the people of a county, and that under its provisions it is possible for the inhabitants of the county seat town to shift the burden of maintaining the local high school from their own shoulders to those of the people of the county at large. This is a matter for legislative consideration. The court is not authorized to remedy ill-considered or defective legislation, if any there be.

We are unable to see that this tax is levied for an illegal or unauthorized purpose, and therefore no injunction to restrain its collection should be granted.

The judgment of the district court is

AFFIRMED.

FAWCETT and HAMER, JJ., dissenting.